UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Sheri S., | Case No. 18-cv-1063 (TNL) |
| Plaintiff, | |
| v. | **ORDER** |
| Andrew Saul, Commissioner of Social Security,[1] | |
| Defendant. | |

David L. Christianson, Christianson Law, 1201 Marquette Avenue South, Suite 110, Minneapolis, MN 55403 (for Plaintiff); and

Linda H. Green, Special Assistant United States Attorney, 1301 Young Street, Suite A702, Dallas, TX 75202 (for Defendant).

## I. INTRODUCTION

Plaintiff Sheri S. challenges Defendant Commissioner of Social Security's denial of her application for disability insurance benefits ("DI") under Title II of the Social Security Act, 42 U.S.C. § 1381 and supplemental security income ("SSI") under Title XVI of the Social Security Act. This matter is before the Court on the parties' cross motions for summary judgment. The parties have consented to a final judgment from the undersigned United States Magistrate Judge in accordance with 28 U.S.C. § 636(c) and D. Minn. LR

---

[1] Andrew Saul is currently serving as the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted as Defendant in this suit. Fed. R. Civ. P. 25(d).

7.2. For the reasons set forth below, the Court denies Plaintiff's motion and grants Defendant's motion.

## II. BACKGROUND

### A. Procedural History

Plaintiff filed an action for SSI and DI on May 29, 2014, alleging a disability onset date of February 14, 2013. Plaintiff alleged impairments of diabetes, hepatitis C, bipolar disorder, anxiety, depression, post-traumatic stress disorder, HBP, incogitant, and vasovagal reaction. Plaintiff was found not disabled on September 17, 2014. That finding was affirmed upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge. A hearing was held on May 24, 2017 and, on June 29, 2017, the ALJ issued a decision denying Plaintiff's claim for benefits. Plaintiff sought review of the ALJ's decision through the Appeals Council, which denied her request for review. Plaintiff now seeks review by this Court.

### B. Administrative Hearing and ALJ Decision

The ALJ found that Plaintiff had the following severe impairments: bipolar disorder, obesity, gout, restless leg syndrome, hypertension, asthma, carpal tunnel syndrome, and polysubstance abuse and alcohol abuse disorder. (Tr. 19). The ALJ further found and concluded that Plaintiff's impairments, including substance use disorder, met the criteria of Section 12.04 (Depressive, Bi-Polar Disorders of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1). (Tr. 20-25). The ALJ then found that if Plaintiff "stopped the substance use," her remaining limitations would still cause more than a minimal impact on her ability to perform basic work activities. (Tr. 25). The ALJ determined, however, that if

Plaintiff stopped substance use, she would no longer meet a listed impairment in 20 C.F.R. pt. 404, subpt. P, app. 1. The ALJ considered Listings 1.02 (major dysfunction of a joint), 3.03 (asthma), 4.04 (ischemic heart disease), 11.14 (peripheral neuropathy), and 14.09 (inflammatory arthritis). The ALJ then found that if Plaintiff stopped substance use, she would have the residual functioning capacity ("RFC")

> to perform light work as defined in 20 CFR 404.1567(b) and 416.927(b) exception occasional power gripping with right/left hand; occasionally able to climb ramps, stairs, balance; never able to climb ladders, ropes, or scaffolds, not able to operate a motor vehicle; never work in humidity, wetness; able to work in dust, odors, fumes, and pulmonary irritants; all indoor work must be well ventilated, HVAC controlled conditions; no outdoor or indoor work that requires direct exposure to concentrated sources of pulmonary irritants; never work in extreme cold or heat; must have access to bathroom facilities on same floor on which working.

(Tr. 31). The ALJ concluded that if Plaintiff stopped substance use, she was capable of performing past relevant work as an administrative assistant, accounting clerk, and office clerk (Tr. 37). The ALJ then determined that substance use disorder was "a contributing factor material to the determination of disability because [Plaintiff] would not be disabled if she stopped the substance use[.]" (Tr. 37). Accordingly, the ALJ found that Plaintiff was not disabled. (Tr. 37-38).

### III. ANALYSIS

#### A. Legal Standard

Disability benefits are available to individuals who are determined to be under a disability. 42 U.S.C. §§ 423(a)(1), 1381a; *accord* 20 C.F.R. §§ 404.315, 416.901. An individual is considered to be disabled if he or she is unable "to engage in any substantial

3

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a). This standard is met when a severe physical or mental impairment, or impairments, renders the individual unable to do his or her previous work or "any other kind of substantial gainful work which exists in the national economy" when taking into account his or her age, education, and work experience. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); *see also* 20 C.F.R. § 404.1505(a). Disability is determined according to a five-step, sequential evaluation process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The ALJ must consider whether:

> (1) the claimant was employed; (2) she was severely impaired; (3) her impairment was, or was comparable to, a listed impairment; (4) she could perform past relevant work; and if not, (5) whether she could perform any other kind of work.

*Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). In general, the burden of proving the existence of disability lies with the claimant. 20 C.F.R. § 404.1512(a); *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991).

This Court reviews whether the ALJ's decision is supported by substantial evidence in the record as a whole. *Boettcher v. Astrue*, 652 F.3d 860, 863 (8th Cir. 2011) (citing *Harris v. Barnhart*, 356 F.3d 926, 928 (8th Cir. 2004)); 42 U.S.C. § 405(g). "Substantial evidence means less than a preponderance but enough that a reasonable person would find it adequate to support the decision." *Boettcher*, 652 F.3d at 863 (citing *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005)). This standard requires the Court to "consider

4

the evidence that both supports and detracts from the ALJ's decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (citing *Ellis v. Barnhart*, 393 F.3d 988, 993 (8th Cir. 2005)).

The ALJ's decision "will not [be] reverse[d] simply because some evidence supports a conclusion other than that reached by the ALJ." *Perks*, 687 F.3d at 1091 (citing *Pelkey v. Barnhart*, 433 F.3d 575, 578) (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. *Hilkemeyer v. Barnhart*, 380 F.3d 441, 445 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993). Likewise, courts "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Pelkey*, 433 F.3d at 578.

### B. Administrative Record

Plaintiff has received care from Dr. Jonathan Uecker since 2005 or 2006, which includes times of sobriety and non-sobriety. (Tr. 70). In March 2012, Plaintiff reported she had lost her home, felt she could not work or focus and that she was tense. (Tr. 492). Dr. Uecker reported that her orientation as to time, person, place, and situation was appropriate; her eye contact and speech were normal; she appeared well-groomed; her mood was euthymic; her affect was appropriate; her thought content was logical; and she appeared goal directed. (Tr. 494).

5

Dr. Uecker then saw Plaintiff in August 2012. She reported being homeless and in the midst of dispute with her husband and daughter. She further stated, however, that she was not depressed or hopeless, had "some anxiety," and that she was sleeping well. (Tr. 495).

Dr. Uecker next encountered Plaintiff in October 2012. There, he assessed her with bipolar II disorder, social phobia, alcohol abuse, and nicotine dependence. (Tr. 498). He also assigned Plaintiff a GAF score between 51 and 60, which indicated moderate symptoms. (Tr. 498). Plaintiff reported at that visit that she was not hopeless, but continued to experience on-going anxiety and felt easily overwhelmed. (Tr. 499). She also reported that her poor concentration and anxious mood inhibited her daily functioning (Tr. 499). She reported similar concerns in November 2012. (Tr. 502).

A few weeks later, Plaintiff saw Dr. Uecker again. He noted that Plaintiff appeared "improved," but with "lots of stresses." (Tr. 504). Plaintiff noted that her sleep was better, that she still experienced on-going anxiety and felt easily overwhelmed. (Tr. 505). She also reported that her "anxious mood, poor concentration, and pervasive depressed mood" continued to inhibit her daily functioning. Dr. Uecker assigned Plaintiff a GAF score between 61 and 70, which indicated some "mild symptoms." (Tr. 504).

Plaintiff next saw Dr. Uecker in April 2013. He assigned her a GAF score between 51 and 60 and noted that she was still anxious. (Tr. 507). Plaintiff continued to report problems with her daily functioning as a result of her mood and concentration. (Tr. 509). Sleep continued to be better for her. (Tr. 509). Plaintiff appeared improved and less anxious in July 2013, but reported some trouble with sleep. (Tr. 511, 513). Dr. Uecker made similar

6

observations at a January 2014 appointment, though he noted Plaintiff was depressed and had bouts of anxiety. (Tr. 517). Plaintiff reported in June 2014 that she was not depressed nor hopeless. (Tr. 522). Dr. Uecker repeatedly reported that Plaintiff's insight and judgment, recent memory and remote memory were intact, and that her attention span was "focused." (Tr. 494, 497, 499-500, 502-03, 506, 509-10, 514, 518, 524)

In September 2013, Dr. Uecker referred Plaintiff to Dr. Heather Bodurtha for a psychological evaluation report. Plaintiff indicated that she was terminated from her job "for non-performance." (Tr. 527). Dr. Bodurtha noted that Plaintiff was "probably an extremely depressed and ineffective individual who is experiencing personality deterioration." (Tr. 530-31). She also noted, based on a personality inventory, that Plaintiff felt very insecure, held some beliefs that "appear to be disconnected from reality," and that symptoms of severe psychosis were likely present. (Tr. 531). Dr. Bodurtha further indicated, based on the Millon Clinical Multiaxial Inventory, that Plaintiff's profile was "noted" by her "marketed dependency needs, her depressive seeking of attention and reassurance from others, and her intense fear of separation[.]" (Tr. 531). Dr. Bodurtha noted that these results were "somewhat questionable because of the high level of concerns [Plaintiff] noted in a wide variety of areas." (Tr .533). Dr. Bodurtha diagnosed Plaintiff with Bipolar I Disorder and Generalized Anxiety Disorder. (Tr. 534). She assigned Plaintiff a GAF score of 47. (Tr. 534).

Plaintiff had an Adult Rehabilitative Mental Health Services ("ARMHS") diagnostic assessment in May 2013. (Tr. 634). The provider administering the assessment diagnosed her with Bipolar II disorder, episodic alcohol abuse, and post-traumatic stress

7

disorder (Tr. 636). The assessment recommended Plaintiff receive assistance in developing coping strategies, developing relationships, and utilizing medication education resources. (Tr. 636-37). Plaintiff began seeing an ARMHS nurse, who reported Plaintiff's mood and affect were appropriate, her orientation, attention, memory, insight, and judgment were fair, and her thought form logical and coherent. (Tr. 631-33).

In August 2013, Plaintiff underwent an ARMHS functional assessment. (Tr. 618). That assessment indicated that Plaintiff's mental health symptoms created barriers to her ability to obtain and maintain employment. (Tr. 618). In addition, the provider administering the assessment noted that Plaintiff's symptoms inhibited her ability to obtain transportation and housing, engage in meaningful social activities, and attend her medical appointments. (Tri. 618-19). Plaintiff was diagnosed with Bipolar II disorder and Post-Traumatic Stress disorder following that assessment. (Tr. 618).

Plaintiff had additional ARMHS diagnostic assessments in July 2014 and September 2015. (Tr. 543, 962). The July 2014 assessment indicated Plaintiff's symptoms, which included an anxious mood, worry, and difficulty concentrating, were moderate in intensity and lasted two or three days each month. (Tr. 546). The assessment further noted that Plaintiff's "mental illness result[ed] in functional impairment." (Tr. 547). The provider administering the assessment diagnosed Plaintiff with Bipolar II disorder, Generalized Anxiety Disorder, and episodic alcohol abuse, noting that she recently had an alcohol relapse. (Tr. 547). The provider administering the September 2015 assessment reached the same diagnosis. (Tr. 966).

Plaintiff also presented for additional functional assessments in December 2013, April 2014, July 2014, October 2014, January 2015, December 2015, and November 2016. (Tr. 536, 565, 589, 776, 793, 1283, 1363, 1468). As before, those assessments indicated that Plaintiff's mental health symptoms "create barriers to current functioning in the area of obtaining and maintaining employment." (Tr. 536, 566, 589, 776, 793, 1283, 1363, 1468). Each of the assessments continued to indicate that Plaintiff had trouble obtaining transportation. (Tr. 537, 566-67, 589-90, 777, 794, 1284, 1364, 1469).

Progress notes indicate that Plaintiff met regularly with ARMHS providers and nurses regarding her treatment plan and her medical and financial needs over the next few years. (Tr. 553-555, 538-564, 567-627, 761-775, 781-793, 798-814, 825-832, 855-961, 968-1024, 1259, 1265-1282, 1285-1300, 1311-1320, 1325-1344, 1353-1362, 1365-1376). Plaintiff was generally cooperative and engaged in these sessions. (*See id.*). In general, she worked on developing relationships with friends and family and identifying things that caused her anxiety to increase. (*Id.*).

Plaintiff also continued to see Dr. Uecker from 2015 until 2017. At a February 2015 appointment, she reported that anxiety and concentration inhibited her daily functioning. (Tr. 745-46). She also reported significant financial stress and "some" continued anxiety. (Tr. 745). At a subsequent appointment several months later, she indicated that she was more depressed and had recently experienced a panic attack, her first in three or four months. (Tr. 839). In 2017, Plaintiff began to report that she "struggles with anxiety" and experiences one or two panic attacks a week. (Tr. 1261, 1300).

Dr. Uecker ultimately opined, in a mental functioning questionnaire, that Plaintiff would have marked limitations in her ability to remember work-like procedures and make simple work-related decisions, sustain an ordinary routine, respond appropriately to changes in a routine work setting, perform at a consistent pace without an unreasonable number of rest periods, work in coordination and proximity to others, accept instructions and respond appropriately to criticism, and get along with co-workers. (Tr. 1257). He further stated that Plaintiff would have the same limitations with her ability to handle "normal work stress," maintain regular attendance, and complete a normal workday and workweek. (Tr. 1258). In addition, he indicated that Plaintiff would have moderate limitations in her ability to understand, remember, and carry out simple instructions and interact with the general public. (Tr. 1257). As a result, Dr. Uecker stated that Plaintiff would require at least four days off a month from work and that she would be off task more than 20 percent of the time. (Tr. 1258).

In evaluating Plaintiff's initial claims under both Title II and Title XVI, state consultant Dr. Mary Sullivan assessed Plaintiff's affective and anxiety disorders as severe. (Tr. 128, 140). In looking at the "B" Criteria of the listings, Dr. Sullivan determined that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace and in maintaining social function. (Tr. 128, 140-41). She further indicated that Plaintiff had mild restriction of activities of daily living and no repeated episodes of decompensation. (Tr. 128, 140-41). In assessing Plaintiff's RFC, Dr. Sullivan indicated that Plaintiff had no significant limitations in her ability to remember work-like procedures and locations, understand and remember very short and simple instructions, maintain attention and

concentration for extended periods, sustain an ordinary routine without special supervision, and complete a normal workday and workweek without interruption. (131-32, 143-45). Dr. Sullivan further indicated that Plaintiff had moderate limitations in her ability to understand and remember detailed instructions, carry out detailed instructions, perform activities in a schedule, maintain regular attendance, work in coordination with others without being distracted by them, interact appropriately with the general public, accept instructions and respond appropriately to criticism, and respond appropriately to changes in the work setting. (Tr. 131-32, 143-45). These findings were largely affirmed by state consultant Dr. R. Owen Nelson on reconsideration. (Tr. 159-164, 173-178).

### C. ALJ Did Not Err In Disregarding Treating Physician Opinion

Plaintiff first contends that the ALJ erred by disregarding the opinion of her treating physician, Dr. Uecker, regarding Plaintiff's functioning during times of sobriety. Under 20 C.F.R. § 404.1527(c) or § 416.927(c), medical opinions from treating sources are weighed using several factors: (1) the examining relationship; (2) the treatment relationship, such as the (i) length of the treatment relationship and frequency of examination and the (ii) nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. If a treating source's medical opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record," it is given controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Treating sources include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-

language pathologists. 20 C.F.R. §§ 404.1502(a), 416.902(a). "A treating physician's opinion that a claimant is disabled or cannot be gainfully employed gets no deference because it invades the province of the Commissioner to make the ultimate disability determination." *House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007). An ALJ "may give a treating doctor's opinion limited weight if it provides conclusory statements only." *Samons v. Astrue*, 497 F.3d 813, 818 (8th Cir. 2007) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1494 (8th Cir. 1995)). Additionally, "[a] treating physician's own inconsistency may . . . undermine his opinion and diminish or eliminate the weight given his opinions." *Hacker v. Barnhart*, 459 F.3d 934, 937 (8th Cir. 2006) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)).

In assessing Plaintiff's RFC, the ALJ placed little weight on Dr. Uecker's opinion, as described in the mental functioning questionnaire. (Tr. 36). The ALJ explained that Dr. Uecker's opinion during Plaintiff's periods of sobriety was "inconsistent with treatment notes showing the [Plaintiff] coherent in her thought process and unremarkable in her perceptual process and thought content." (Tr. 36). Instead, the ALJ placed great weight on the state consultant opinions because they used "expertise and specialized knowledge of assessing mental impairments and cited evidence to support the opined limitations[.]" (Tr. 36). The ALJ further explained that the state consultant opinions were supported by the function reports, mental status examinations, observations by providers, and Plaintiff's course of treatment. (Tr. 36).

The ALJ's findings are supported by substantial evidence. Dr. Uecker concluded that Plaintiff would have marked limitations in almost every area of functioning. But, as

described above, his treatment notes repeatedly describe Plaintiff as possessing intact insight and judgment and memory, as well as a focused attention span. Dr. Uecker did not explain, in filling out his questionnaire, what accounted for the change in his assessment. *See Davidson v. Astrue*, 578 F.3d 838, 843 (8th Cir. 2009) (concluding that an ALJ may discount an opinion that is inconsistent with physician' treatment notes). Nor did he identify the reasons for the conclusions he drew in his questionnaire. *See McDade v. Astrue*, 720 F.3d 994, 1000 (8th Cir. 2013) (noting that controlling weight need not be given to treating physician opinion when opinion is conclusory and physician fails to explain how he or she reached this opinion). The ALJ therefore did not err in favoring the state consultants' opinions over the treating physicians' opinions.

It is true that the state consultants did not examine Plaintiff personally and that, typically, such opinions are "entitled to little weight." *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004). But when "better or more thorough medical evidence" exists, the ALJ may disregard the treating provider's opinion and place greater weight on that offered by the state consultants, so long as the ALJ gives reasons for his assessment and those reasons are supported by substantial evidence. *Smith v. Colvin*, 756 F.3d 621, 625-26 (8th Cir. 2014) (internal quotation marks omitted) (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). The ALJ did so here. The ALJ explained that the state consultants' opinions were supported by the record, including observations from Plaintiff's treatment providers, and also noted that those consultants "cited evidence" to support their conclusions. In short, the ALJ placed the greatest weight on the opinions most consistent with the remainder of the record. The ALJ's decision to do so was not erroneous.

### D. ALJ Did Not Err in Determining Alcohol Abuse is Contributing Factor Material to Determination of Disability

Plaintiff next argues that there is not substantial evidence in the record to support the ALJ's determination that she does not meet Listed Impairment 12.04 when sober. A claimant's application for benefits must be denied if "alcohol or drug abuse comprises a contributing factor material to the determination of disability[.]" *Brueggemann v. Barnhart*, 348 F.3d 689, 693 (8th Cir. 2003) (citing 42 U.S.C. § 423(d)(2)(C); 20 C.F.R. § 404.1535). In making this assessment, the ALJ must first determine whether the claimant is disabled. *Id*. at 694. If the ALJ makes this determination, he or she must then consider what limitations would remain "when the effects of substance use disorders are absent." *Id*. at 694-95. Though this is a "hypothetical" determination and "therefore more difficult than the same task when the claimant has stopped[,]" the ALJ must develop a record and support his or her conclusion with substantial evidence. *Id*. After the ALJ makes this determination, the ALJ may reach a conclusion as to whether the substance use disorder is "a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(a). The burden to prove that alcoholism is not a contributing factor falls on the claimant. *Estes v. Barnhardt*, 275 F.3d 722, 725 (8th Cir. 2002). But if the ALJ is unable to determine whether the substance use disorder is a contributing factor, the claimant has satisfied his or her burden and is entitled to benefits. *Brueggemann*, 348 F.3d at 693.

In this case, the ALJ concluded that Plaintiff's impairments met the criteria of Listing 12.04 and therefore determined that Plaintiff was disabled. (Tr. 20). The ALJ reached this finding in part because the ALJ determined that Plaintiff's impairments caused

marked limitations in three areas of mental functioning: (1) the ability to interact with others; (2) the ability to concentrate, persist, or maintain pace; and (3) the ability to adapt or manage herself. (Tr. 21-24). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.00(A)(2)(b) (requiring marked limitation in two paragraph B criteria to be considered disabled). But the ALJ found that, when sober, Plaintiff would only have mild limitations in each of those areas of functioning. (Tr. 25-28) Accordingly, the ALJ found that alcoholism was a contributing factor material to her disability. Plaintiff argues that the ALJ erred because the evidence that the ALJ relied on did not constitute substantial evidence in the record as a whole and that, in fact, substantial evidence established that her alcoholism was not a contributing factor material to her disability.

Plaintiff's argument is not persuasive. The ALJ cited extensively to the treatment notes in support of his decision. Those treatment notes indicate that, when sober, Plaintiff interacted with her family and significant other and assisted her neighbor, who had just undergone surgery. (Tr. 557, 607). The same notes indicate that Plaintiff was eager to discuss her medical needs with her providers and that she was engaged in the treatment process. The ALJ was well within his discretion to conclude these notes showed that Plaintiff's impairments caused her only mild limitations when interacting with others.

The ALJ also cited to substantial evidence to support his decision that Plaintiff's impairments caused her mild limitations in her ability to concentrate, persist, or maintain pace. As noted above, the ALJ cited to treatment notes showing that Plaintiff participated in hobbies, including puzzles and going on walks, and working on her garden. The ALJ also cited to treatment notes that showed that Plaintiff's thought content and process was

logical and that her memory was intact and her attention was focused. (Tr. 831). During this time, Plaintiff denied the use of drugs or alcohol. Again, the ALJ's findings were not erroneous.

In addition, the ALJ cited to treatment notes showing that despite her impairments, Plaintiff was capable of caring for herself. The ALJ relied on treatment notes showing that Plaintiff cooperated with her medication regimen (Tr. 837), that she was well groomed and cooperative, and that she lived in an apartment that she shared with her boyfriend. The ALJ was well within his discretion to rely on these materials in order to find that Plaintiff had only mild limitations in her ability adapt or manage herself.

Plaintiff argues the materials relied on showed that she continued to struggle with anxiety and that her impairments inhibited her daily functioning. She further contends that treatment notes from other visits contradict the ALJ's findings. Though the materials that Plaintiff cites to show that Plaintiff continued to struggle with anxiety that, among other things, inhibited her ability to sleep and concentrate, the ALJ need not find that a person be symptom free in order to deny benefits. Instead, the ALJ must only conclude that the claimant's impairments would prevent her from working even if she were sober. *See Estes*, 275 F.3d at 724-25 (upholding ALJ decision where evidence showed claimant could "conduct daily activities and perform certain jobs" when sober). The ALJ made extensive findings regarding this issue and cited to the administrative record in order to support those findings. The Court therefore concludes the ALJ's decision was supported by substantial evidence.

In reaching this decision, the Court acknowledges, as Plaintiff argues, that there is evidence in the record to support her contention that alcohol was not a contributing factor material to her disability. But this Court may not reverse the ALJ's decision simply "because substantial evidence exists in the record that would have supported a contrary outcome . . . or because [the Court] would have decided the case differently." *Roberts v. Apfel*, 222 F.3d 466, 468 (8th Cir. 2000); *see also Woolf*, 3 F.3d at 1213 (stating that the fact that Plaintiff is able to identify some evidence in the record that supports her position does not mean the ALJ's decision must be reversed); *Thiele v. Astrue*, 856 F. Supp. 2d 1034, 1045 (D. Minn. 2012) (concluding the same) (citing *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994)). As the Commissioner notes, it is not surprising that, in a thousand-page administrative record, the party challenging the ALJ's decision can identify some evidence that contradicts the ALJ's findings. *See Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017). But if, "after reviewing the record, the Court finds that it is possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, the court must affirm the [C]ommissioner's decision." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001). In this case, the ALJ carefully evaluated the evidence and identified good reasons to support his decision. The ALJ explained how Plaintiff's alcoholism contributed to her disability and how, when sober, Plaintiff's impairments did not rise to the level of Listing 12.04. The Court must therefore grant the Commissioner's motion for summary judgment and deny Plaintiff's motion for summary judgment.

## IV. CONCLUSION

Based upon the record, memoranda, and proceedings herein, and for the reasons stated above, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment, (ECF No. 11), is **DENIED**, Defendant's Motion for Summary Judgment, (ECF No. 13), is **GRANTED**, and this matter is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Date: June 28, 2019                             *s/ Tony N. Leung*
                                                Tony N. Leung
                                                United States Magistrate Judge
                                                District of Minnesota

                                                *Sheri S. v. Saul*
                                                Case No. 18-cv-1063 (TNL)